## RODGERS v. STEWART et al.

No. 19343. Opinion Filed Feb. 18, 1930.

Hatchett & Ferguson, for plaintiff in error.

W. F. Semple and B. W. Carter, for defendants in error.

HEFNER, J. This action was instituted on September 2, 1926, in the justice of the peace court of Bryan county by plaintiff in error, as plaintiff, to recover the sum of $173.87 for oats sold to defendants in error, herein referred to as defendants. Defendants filed their answer and cross-petition in the justice court on September 23, 1926, in which they admitted an indebtedness of $163.27 to plaintiff, but alleged that plaintiff was indebted to them in the sum of $196 for oat sacks sold to plaintiff on open account on July 4. 1922, and further alleging that plaintiff, at the time of the transaction, was, and at all times since then has been, a resident of the state of Texas and a nonresident of the state of Oklahoma. From a judgment in favor of plaintiff, defendants appealed to the district court of Bryan county, where a trial de novo to a jury resulted in a verdict and judgment in favor of defendants on their cross-petition in the sum of $16.40. Plaintiff brings the case here for review.

The plaintiff contends that this case should be reversed, first, because there was no evidence to support the judgment; and, second, because the evidence showed that the alleged cross-action of the defendants was barred by the statute of limitations. Under the view we take of the case, we do not think it necessary to pass upon the question of limitations.

The contention of plaintiff is that the defendants seek to collect the account of Frank Rodgers, the son of plaintiff, from the plaintiff. It is contended that the plaintiff did not buy the oat sacks with which

276

he is charged, nor did he authorize them to be charged to him, or at any time agree to pay for them. A portion of the testimony of the defendant Stewart, who sold the sacks, is as follows:

"Q. Did D. B. Rodgers, during the year 1922, order any oat sacks from you? A. Not personally. Q. Did he give you a written order of any kind to let Frank Rodgers and Earnest McDonald have 1,000 oat sacks? A. No, sir. Q. Did he ever at any time tell you to let Earnest McDonald or Frank Rodgers, on his part, during 1922, have oat sacks and charge to his account? A. He did not say 1922, he said let his men have any sacks and some oats too—either that was 1922, I don't remember—I think it was in 1921. Q. Was Mr. Rodgers in your place of business in 1922 before you let Earnest McDonald have these sacks? A. I don't remember. Q. He didn't tell you to let him have the sacks? A. Earnest came in and said he wanted 1,000 sacks. Q. If you sent Mr. Rodgers a statement, did you hear from him? A. Mr. Rodgers answered back and said the sacks were not for him. I got in the car right straight; that was in September—he wrote back on the back of the letter I wrote him, and I went to see Frank and he said he guessed the sacks were for him and that was the first intimation that I had about it. Q. You were not authorized to charge these sacks by Mr. Rodgers? A. No, sir. Q. You don't know who the sacks were bought for? A. No, sir."

Earnest McDonald, the man who purchased the oat sacks, testified as follows:

"Q. Do you remember the incident of getting oat sacks from them in 1922? A. Yes, sir. Q. For whom did you get those sacks? * * * A. I got some from the mill down here for F. A. Rodgers. Q. Who is he? A. The old man's boy. Q. Was he a tenant on the old man's place? A. Yes, sir. Q. Was you working for Frank? A. Yes, sir. Q. Had Mr. B. D. Rodgers ever authorized you to go to Stewart's and get oat sacks? A. No, sir. Q. Who did you go get them for? A. Frank Rodgers. Q. When you got the sacks, who did you tell him to charge them to? A. Frank Rodgers. Q. What did he say? A. He said, 'Alright.' Told me to go and get them. Some of them gave me a little old slip. Q. You notice whose name was put on the slip? A. No, sir."

Frank Rodgers testified that the oat sacks were purchased for him and that he sent Earnest McDonald to get them. A portion of his testimony is as follows:

"Q. Where did you buy your sacks that year to sack your oats? A. At Mr. Stewart's. Q. Do you know how many you bought? A. One thousand. Q. Who did you send after them. A. Earnest McDon-

ald. Q. Did Mr. Stewart ever give you a statement of the account? A. No, sir. Q. Did he ever talk to you about the account? A. It was in August sometime, he did. Q. Where? A. He came to the place. Q. How much did he say the sacks were? A. $140. Q. Did he tell you whether or not he had written to your father? A. Yes, sir; I believe he did. Q. Did he tell you what your father had said about it? A. He said he had a letter or statement from my father stating that they were not his. I told him they were my sacks."

Mr. B. D. Rodgers, the plaintiff, testified that he did not buy the sacks, did not authorize anyone to buy them for him, that Mr. Stewart sent him a statement and that he wrote Mr. Stewart and informed him that the account was not his.

This is practically all of the testimony in reference to the purchase of the sacks. Mr. Stewart, one of the defendants, testified that Mr. Rodgers did not order the sacks. He also testified that he was not authorized to charge the sacks by Mr. Rodgers. Earnest McDonald, who purchased the sacks, testified that he was working for Frank Rodgers and that Frank Rodgers sent him to get the sacks, and that he went and got them and bought them for Frank Rodgers. He further testified that he told Mr. Stewart to charge the sacks to Frank Rodgers. This testimony was not disputed by Mr. Stewart.

The evidence discloses that the sacks were actually purchased for Frank Rodgers, and not for B. D. Rodgers. Mr. Stewart was instructed by the purchaser of the sacks to charge them to Frank Rodgers. The evidence discloses that B. D. Rodgers did not authorize anyone to charge sacks to him. Nor did he give anyone authority to purchase them for him or for his account.

As we view the evidence, the court should have given a peremptory instruction for the plaintiff for the amount admitted to be due the plaintiff by the defendants, and should have sustained the plaintiff's demurrer to the evidence of defendants on the cross-action. The cause is reversed, with directions to the trial court to take such further action as may be right and just and not inconsistent with the views herein expressed.

MASON, C. J., and CLARK, RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

Note.—See "Accounts and Accounting," 1 C. J. §206, p. 668, n. 20. "Trial," 38 Cyc. p. 1575, n. 22.